## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTOINETTE BUGGS,

      Plaintiff,

v.

FCA US, LLC, a Delaware Limited
Liability Company, and DONNA
LANGFORD REED, an individual,

      Defendants.

CASE NO.:  20-CV-10218

HON. NANCY G. EDMUNDS

---

STEPHEN M. LOVELL (P80921)
**ERNST, CHARARA & LOVELL**
Attorney for Plaintiff
645 Griswold Street – Suite 4100
Detroit, MI  48226
PH: (313) 965-5555
FAX: (313) 965-5556
stephen@ecllawfirm.com

SHARON RAE GROSS (P42514)
**OGLETREE, DEAKINS, NASH
SMOAK & STEWART, PLLC**
Attorneys for Defendant FCA US, LLC
34977 Woodward Ave., Suite 300
Birmingham, MI 48009
PH: (248) 593-6400
FAX: (248) 283-2925
Rae.gross@ogletree.com

TERRY W. BONNETTE (P67692)
**NEMETH LAW, P.C.**
Attorneys for Defendant Donna
Langford Reed
200 Talon Centre Drive, Suite 200
Detroit, MI 48207
PH: (313) 567-5921
tbonnette@nemethlawpc.com

---

## DEFENDANT FCA US, LLC'S
## MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant FCA US, LLC, by and through its attorneys, and pursuant to Federal Rule of Civil Procedure 56(a), hereby moves for summary judgment dismissing all counts of Plaintiff's Complaint.  In support of its motion, FCA US, LLC states as follows:

1.  Plaintiff Antoinette[1] Buggs' Complaint asserts claims for:

    - Disparate treatment in violation of the Michigan Persons With Disabilities Civil Rights Act (PWDCRA) and the Americans With Disabilities Act (ADA) (Counts I and IV);

    - Retaliation in violation of the PWDCRA and the ADA (Counts II and V); and

    - Failure to accommodate in violation of the PWDCRA and the ADA (Counts III and VI).

2.      As explained more fully in the accompanying Brief in Support, Plaintiff's claims fail as a matter of law.  Plaintiff cannot establish a *prima facie* claim under any of the cited statutes; much less rebut FCA US, LLC's legitimate, non-discriminatory business reason for termination of her employment.

3.      Pursuant to E.D. Mich. L.R. 7.1(a), undersigned counsel for FCA US, LLC certifies that she communicated in writing with Plaintiff's counsel on June 14, 2021, explaining the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought.

---

[1] The Complaint refers to Plaintiff as "Antoinette" and to avoid confusion, Defendant has adopted that spelling; however, according to her employment records, medical records, and EEOC Charge, she spells her name "Antionette."

Wherefore, Defendant FCA US, LLC requests this Honorable Court enter summary judgment in favor of FCA US, LLC on all claims alleged in Plaintiff's Complaint.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Sharon Rae Gross
SHARON RAE GROSS (P42514)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Defendant FCA US, LLC
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
248-593-6400
rae.gross@ogletree.com

</div>

Dated: June 15, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTOINETTE BUGGS,

       Plaintiff,                    CASE NO.:  20-CV-10218

                                        HON. NANCY G. EDMUNDS

v.

FCA US, LLC, a Delaware Limited
Liability Company, and DONNA
LANGFORD REED, an individual,

       Defendants.

_____

| | |
|---|---|
| STEPHEN M. LOVELL (P80921) | SHARON RAE GROSS (P42514) |
| **ERNST, CHARARA & LOVELL** | **OGLETREE, DEAKINS, NASH** |
| Attorney for Plaintiff | **SMOAK & STEWART, PLLC** |
| 645 Griswold Street – Suite 4100 | Attorneys for Defendant FCA US, LLC |
| Detroit, MI 48226 | 34977 Woodward Ave., Suite 300 |
| PH: (313) 965-5555 | Birmingham, MI 48009 |
| FAX: (313) 965-5556 | PH: (248) 593-6400 |
| stephen@ecllawfirm.com | FAX: (248) 283-2925 |
| | Rae.gross@ogletree.com |
| | |
| | TERRY W. BONNETTE (P67692) |
| | **NEMETH LAW, P.C.** |
| | Attorneys for Defendant Donna Langford Reed |
| | 200 Talon Centre Drive, Suite 200 |
| | Detroit, MI 48207 |
| | PH: (313) 567-5921 |
| | tbonnette@nemethlawpc.com |

_____

## BRIEF IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF ISSUES PRESENTED.................................................v

CONTROLLING AND MOST APPROPRIATE AUTHORITY .......................... vi

I.     INTRODUCTION ................................................................1

II.    STATEMENT OF FACTS .......................................................2

       A. Plaintiff's Job History. ....................................................2

       B. Medical Issues, Work Restrictions and Accommodations ....................3

            1.   2016 - Stroke and Carpal Tunnel......................................3

            2.   2017 – No Work Restrictions on File .................................5

            3.   2018 Sporadic Carpal Tunnel Restrictions ...........................6

            4.   2019 – Continued Restrictions And Intermittent FMLA Leave........9

            5.   Job Assignment.....................................................10

       C. Termination for Falsification of FMLA Provider Certificate. ...............11

III.   STANDARD OF REVIEW.....................................................13

IV.    ARGUMENT...................................................................13

       A. Plaintiff Cannot Establish A Failure to Accommodate..........................14

            1.   Plaintiff is not "Disabled" under the ADA or PWDCRA ...............14

            2.   Plaintiff is not Qualified for Her Position .........................17

            3.   Plaintiff Proposed No Reasonable Accommodation ......................18

       B. Plaintiff Cannot Establish Disability Discrimination. ...........................21

       C. Plaintiff Cannot Establish ADA or PWDCRA Retaliation. ..................24

       V. CONCLUSION .................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. v. Shelby Cnty. Bd. Of Educ.*,
   711 F.3d 687 (6th Cir. 2013) ...............................................................24

*Booth v. Nissan North America, Inc.*,
   927 F.3d 387 (6th Cir. 2019) .......................................................15, 16

*Bryson v. Regis Corp.*,
   498 F.3d 561 (6th Cir. 2007) ...............................................................24

*Burns v. Coca–Cola Enters, Inc.*,
   222 F.3d 247 (6th Cir. 2000) ...............................................................20

*Cehrs v. Northeast Ohio Alzheimer's Research Center*,
   155 F.3d 775 (6th Cir. 1998) ...............................................................20

*Copeland v. Machulis*,
   57 F.3d 476 (6th Cir. 1995) .................................................................13

*Cox v. Ky. Dept. of Transp.*,
   53 F.3d 146 (6th Cir. 1995) .................................................................13

*Cummings v. Dean Transp., Inc.*,
   9 F. Supp. 3d 795 (E.D. Mich. 2014) ...........................................17, 18

*Donald v. Sybra, Inc.*,
   667 F.3d 757 (6th Cir. 2012) ...............................................................13

*Gruener v. Ohio Casualty Ins. Co.*,
   510 F.3d 661 (6th Cir. 2008) ...............................................................14

*Hedrick v. W. Reserve Care Sys. & Forum Health*,
   355 F.3d 444 (6th Cir. 2004) ...............................................................19

*Hunt v. Monro Muffler Brake, Inc.*,
   769 Fed. App'x 253 (6th Cir. 2019) .....................................................24

*Hurtt v. International Services, Inc.*,
   627 Fed. App'x 414 (6th Cir. 2015) ...............................................14, 21

*Kleiber v. Honda of Am. Mfg., Inc.*,
    485 F.3d 862 (6th Cir. 2007) ...............................................................18

*Lewis v. Humboldt Acquisition Corp.*,
    681 F.3d 312 (6th Cir. 2012) ...............................................................21

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)...............................................................................21

*Peden v. City of Detroit*,
    470 Mich. (2004) ..................................................................................21

*Robinson v. MGM Grand Detroit, LLC*,
    821 Fed. App'x 522 (6th Cir. 2020) .....................................................24

*Rorrer v. City of Stow*,
    743 F.3d 1025 (6th Cir. 2014) .............................................................24

*Seeger v. Cincinnati Bell Tel. Co.*,
    681 F.3d 274 (6th Cir. 2012) ...............................................................23

*Smith v. Towne Properties Asset Management Company, Inc.*,
    803 Fed. App'x 849 (6th Cir. 2020) .....................................................23

*Swann v. Washtenaw County*,
    221 F. Supp. 3d 936 (E.D. Mich 2016) ...............................................13

*Talley v. Family Dollar Stores of Ohio, Inc.*,
    542 F.3d 1099 (6th Cir. 2008) .............................................................14

*Tchankpa v. Ascena Retail Group, Inc.*,
    951 F.3d 805 (6th Cir. 2020) ...............................................................19

*Tinsley v. Caterpillar Fin. Servs., Corp.*,
    766 Fed. App'x 337, 2019 WL 1302189 (6th Cir. Mar. 20, 2019) ....15

*Whitfield v. Tennessee*,
    629 F.3d 253 (6th Cir. 2011) ...............................................................14

**Statutes**

42 U.S.C. § 12101....................................................................................2

MCL 37.1103(d)(i)(A) .............................................................................16

MCL 37.1103(l)(i) ...............................................................................16

MCL 37.1101. ........................................................................................2

## Other Authorities

29 C.F.R. § 1630.2(i) ..........................................................................14

29 C.F.R. § 1630.2(j) ..........................................................................15

Fed. R. Civ. P. 56 ................................................................................25

Fed. R. Civ. P. 56(c)............................................................................13

## STATEMENT OF ISSUES PRESENTED

1. Should Plaintiff's failure to accommodate claims under the ADA and PWDCRA be dismissed where Plaintiff cannot establish she is disabled within the meaning of the ADA and PWDCRA, Plaintiff is not otherwise qualified for her position, and Plaintiff cannot establish she proposed a reasonable accommodation that was denied?

**Defendant FCA answers: Yes**

2. Should Plaintiff's discrimination claims under the ADA and PWDCRA be dismissed where Plaintiff cannot establish she is disabled within the meaning of the ADA and PWDCRA, Plaintiff is not otherwise qualified for her position, and she cannot demonstrate that but for her carpal tunnel syndrome she would not have been terminated?

**Defendant FCA answers: Yes**

3. Should Plaintiff's retaliation claims under the ADA and PWDCRA be dismissed where there is no evidence that but for Plaintiff's protected activity FCA would not have terminated her employment, and Plaintiff cannot establish the decision maker was aware of her EEOC Charge?

**Defendant FCA answers: Yes**

4. Should Plaintiff's discrimination and retaliation claims under the ADA and PWDCRA be dismissed where Plaintiff cannot establish that FCA's legitimate, non-discriminatory reason for terminating her employment was a pretext?

**Defendant FCA answers: Yes**

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

*Booth v. Nissan North America, Inc*., 927 F.3d 387 (6th Cir. 2019)

*Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795 (E.D. Mich. 2014)

*Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862 (6th Cir. 2007)

*Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312 (6th Cir. 2012)

*Robinson v. MGM Grand Detroit, LLC*, 821 Fed. App'x 522 (6th Cir. 2020)

*Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099 (6th Cir. 2008)

## I.   INTRODUCTION

This case arises out of Plaintiff's employment as an assembly worker with Defendant FCA US, LLC ("FCA" or Company").  Plaintiff worked at the Jefferson North Assembly Plant ("JNAP") in Detroit.  Her employment was subject to a Collective Bargaining Agreement ("CBA") and she was represented by the United Auto Workers Union ("UAW").  Plaintiff's alleged disability is carpal tunnel syndrome, which she claims was caused by working on the JNAP assembly line. Plaintiff's was frequently unable to perform the essential duties of any available assembly jobs due to restrictions imposed by her doctor.  These included: no gripping, no lifting in excess of 5 pounds, and/or no use of vibratory hand tools (including drills used on the assembly line).  When restrictions prevented Plaintiff from performing any assembly jobs that were available based on her seniority, FCA accommodated her with multiple excused leaves of absence and intermittent FMLA leave.

Eventually, when a temporary opportunity that was not subject to seniority based bidding became available, Plaintiff was transferred to a job in the Quality Department that – by her admission – met all her carpal tunnel restrictions. While being accommodated in Quality, Plaintiff's employment was terminated when it was discovered that she submitted a falsified FMLA Provider Certificate in violation of FCA's policy.

1

Plaintiff alleges discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL 37.1101 *et seq.*  Summary judgment is appropriate because Plaintiff cannot: (1) establish the requisite elements of a failure to accommodate; (2) demonstrate that "but for" her alleged disability she would not have been terminated or subject to any disparate treatment, or (3) show a causal connection between her termination for falsifying an FMLA Certification and her filing of an EEOC Charge and/or internal complaints, much less demonstrate that her termination was a pretext for unlawful retaliation.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Job History.

Plaintiff began working as a Temporary Part-Time employee ("TPT") for FCA in June 2015.  (Ex. 1, Buggs Deposition, p. 24)[1].  Plaintiff worked on the assembly line at JNAP.  *Id*. As a TPT, Plaintiff did not have regular employee status or seniority.[2] (Buggs, pp. 25-26).  She served as a replacement worker for employees who were absent or on vacation.  *Id.*  While a TPT, Plaintiff was primarily assigned

---

[1] References to deposition transcripts will be cited initially by exhibit number and thereafter by name and page (p.) number reference.

[2] Plaintiff acknowledges that plant seniority is a factor in the assignment of jobs at JNAP under the CBA. (Buggs, p. 36).

to Team 41 on the door line.  (Buggs, pp. 26-27).  Team 41 encompassed about six or seven different assembly jobs.  (Buggs, p. 28).  As a TPT, Plaintiff usually did the "panel secure" job, which required her to use hand drills to apply screws to secure the panel to the door.  *Id*.  At times, she also performed a door tester job that required use of a single hand drill.  (Buggs, p. 29, 107).

Plaintiff was hired as a regular full-time employee as of March 5, 2018. (Buggs, p. 36).  She had several supervisors during her tenure.  Defendant Donna Langford Reed first became Plaintiff's supervisor on or about February 28, 2018 and supervised her until approximately June 5, 2019. (Buggs, p. 193)  Reed is the only supervisor Plaintiff claims engaged in disability discrimination. (Buggs, p. 39).

**B.   Medical Issues, Work Restrictions and Accommodations**

**1.     2016 - Stroke and Carpal Tunnel.**  The first medical issue Plaintiff had while at FCA was a stroke in February, 2016.  (Buggs, p. 40)  Although she was still a TPT and not yet eligible for FMLA, Plaintiff was placed on unpaid leave status until she was able to return to work on February 29, 2016, at which time she had no work restrictions to be accommodated.  (Buggs, p. 40-41; Ex. 2, 2/29/16 Return To Work Form).

Near the end of July, 2016, Plaintiff began experiencing issues with pain in her hands.  (Buggs, p. 50).  She claims she had no such issues before her employment at FCA.  (Buggs, p. 26).  After Plaintiff began experiencing issues with her hands

and upon returning to work from a brief absence, she provided the JNAP Medical Department with a return to work note from her doctor dated July 27, 2016. (Buggs, p. 50; Ex. 3). The note said that Plaintiff might have carpal tunnel syndrome and should be restricted from doing any "*gripping, drilling, and using hand tools*" until November 15, 2016. *Id*. The Medical Department accordingly put Plaintiff's restrictions into the Company's computer system that tracks employees' work restrictions.[3] (Buggs, p. 50; Ex. 4, Reed Deposition, p. 12).

As a result of her restrictions, Plaintiff was unable to perform the functions of the panel secure job. (Buggs, p. 51). She was given a 30 day leave because there were no positions available for her that would meet her restrictions. (Buggs, p. 51). A few weeks later, Plaintiff went to her doctor and requested that he remove all of her restrictions so she could return to work. (Buggs, p. 52-53). Plaintiff then provided the Company with a new doctor's note, dated August 19, 2016, indicating that she had no restrictions. (Ex. 5). Plaintiff returned to work but quickly determined that she still could not do any lifting or use hand tools and therefore informed the Company that she was unable to perform any of the available assembly jobs. (Buggs, p. 55). Although she was still a TPT, Plaintiff was given another approved unpaid leave. *Id*.

---

[3] Supervisors are able to go into this system to view work restrictions and determine if there is a job an employee can be assigned to within their restriction. (Ex. 4, Reed Dep., p. 12).

While off work, Plaintiff submitted a request for intermittent FMLA leave in August, 2016.  (Buggs, p. 57; Ex. 6, 8/23/16 FMLA).  Plaintiff sought intermittent FMLA leave of two to three episodes per month and one day per episode for symptoms related to her previous stroke.  The Company approved Plaintiff's intermittent FMLA leave request; however, her testimony is that she never attempted to utilize FMLA leave during the time she was a TPT through March 5, 2018. (Buggs, pp. 59-60; Ex. 6).

Plaintiff had two surgeries, one on each hand in October and in December, 2016.  (Buggs, p. 60).  Plaintiff was off work continuously for the surgeries and admits that she could not have worked at all during that time.  (Buggs p. 60).

**2.     2017 – No Work Restrictions on File.**  Plaintiff returned to work from her surgeries on January 30, 2017.  (Buggs, p. 61; Ex. 7, 1/26/17 Physical Status Report).  Upon her return to work, Plaintiff presented with no restrictions.  *Id.* Additionally, following an absence due to a car accident in March, 2017, Plaintiff again returned to work with a doctor's note indicating she had no restrictions (Buggs, p. 62; Ex. 8, 3/17/17 Return to Work).

In June of 2017, Plaintiff again requested intermittent FMLA leave.  (Buggs, p. 65; Ex. 9, 6/13/17 FMLA).  Plaintiff's request was denied because she was ineligible for FMLA leave. She had not worked the requisite 1250 hours in the preceding twelve (12) months.  *Id.*  Plaintiff claims that she was "forced" to work on

the rear door panel in July, 2017 and that the job violated her purported restrictions. However, the plant Medical Department had no restrictions on file for Plaintiff in 2017; nor does she offer any evidence of restrictions submitted during this time. (Ex. 10, Medical Department Restriction History).  (Buggs, pp. 66-75; Ex. 11, Work Injury Statement).

**3.     2018 Sporadic Carpal Tunnel Restrictions.**  FCA hired Plaintiff to a regular full-time job effective March 5, 2018. (Buggs, p. 36).  Defendant Donna Langford Reed became Plaintiff's immediate supervisor just a few days earlier, on February 28, 2018.  (Buggs, p. 39).  From the outset, Plaintiff decided that Reed was rude because she commented on Plaintiff's hair and her diet, and came into her work area and touched the doors as she was trying to work on them.  (Buggs, pp. 77-80). Plaintiff memorialized her dislike for Reed in a "Voluntary Statement" she prepared on March 12, 2018 for her Union.[4]  (Ex. 12).  In her statement, Plaintiff claimed that on March 10, 2018, Reed moved her from Team 41 on the door line to Team 38, working on a window seal job – a job she claims she could not do because of her carpal tunnel surgery.  (Buggs, p. 85; Ex. 12).  However, Plaintiff had returned from surgery with no restrictions and there is no record of Plaintiff submitting work

---

[4] Plaintiff prepared a number of such Voluntary Statements that she produced in litigation.  Although she may characterize these statements as complaints, Plaintiff admits she prepared them for the Union, never provided them to FCA, and is unaware if her Union ever did.  (Buggs, pp. 76, 177, 184, 200).  The FCA Labor Relations representative did not receive the statements. (Ex. 14, Willis, p. 25).

restrictions that were in effect as of March 10, 2018.  (Buggs, pp. 73-75; 85-87; Ex. 10).

After attempting to work the window seal job on March 10, 2018, Plaintiff went to the plant Medical Department.  (Buggs, pp. 88-91).  The Medical Department provided her with wrist wraps, biofreeze, and over-the-counter medication. *Id*.  On March 16, 2018, Plaintiff presented the Medical Department with a note from an urgent care center stating that she was restricted from lifting more than 5 pounds for two weeks but that assembly and hand tools were otherwise okay.  (Ex. 13).  The restriction was entered into the computer system but it did not prevent Plaintiff from doing all assembly jobs on Team 41 or Team 38.

On March 26, 2018, Plaintiff presented another doctor's note indicating she could do "no gripping, hand tools are okay, nothing over five pounds" for the period from March 26, 2018 through June 26, 2018.  (Buggs, pp. 100-01; Ex. 15, 3/26/18 Return to Work).  Plaintiff stayed on the panel secure job; however, on June 13, 2018, Plaintiff's drill stopped working, and Reed asked her to use a heavier, secondary drill to do the panel secure job.  (Buggs, pp. 109-118).  Plaintiff refused to use the drill and was not forced to do so.  *Id*.  The normal drill began working again shortly thereafter and production resumed.  *Id*.  After the incident with the drill, Plaintiff asked her doctor to remove the no-gripping restriction.  Plaintiff's new restrictions provided for limited gripping up to five hours a day, no **heavy duty**

drills, and no lifting over five pounds. (Buggs, p. 119; Ex. 16, 6/18/18 Return to Work).

Plaintiff applied for intermittent FMLA leave related to carpal tunnel syndrome in June of 2018.  (Buggs, p. 122-25; Ex. 17, 6/20/18 FMLA).  She was approved for intermittent leave of up to two days per week with a duration of up to three days per episode (Ex. 17).  Plaintiff provided FCA with another doctor's letter with slightly different restrictions in September, 2018.   (Buggs, p. 156; Ex. 18, 9/21/18 Return to Work).  Plaintiff's restrictions were now "activity as tolerated, not >5 lbs, limited hand tools."  (Buggs, p. 156-57; Ex. 18).  At about the same time, on September 19, 2018, Plaintiff filed an EEOC Charge alleging that she was being harassed by her supervisor and that she had submitted a reasonable accommodation request. (Ex. 19).  The Charge was responded to by an FCA in-house attorney in Auburn Hills.[5]

On December 20, 2018, Plaintiff presented restrictions, once again limiting her use of vibratory tools, and restricting her from lifting over 5 pounds. (Buggs, p. 167; Ex. 21, 12/20/18 Return to Work).  Plaintiff admits that during all time periods in 2018 when she had restrictions of no gripping, no lifting over 5 pounds and/or no use of vibratory tools, there were no assembly jobs that she could perform on Team

---

[5] The response focused on pointing out the inherent deficiencies and lack of specificity in the Charge.  (Ex. 20).

41 or Team 38. (Buggs, pp. 104-105).  What Plaintiff apparently wanted was a job off the assembly line; however, with a hire date of March 2018, she did not have enough seniority to secure jobs outside assembly.  (Ex. 32, Capers, p. 28).

### 4.    2019 – Continued Restrictions And Intermittent FMLA Leave.

In March of 2019, Plaintiff provided another doctor's note continuing her restrictions of "limited use" of vibratory tools and no lifting anything over 5 pounds. (Buggs, p. 169; Ex. 22, 3/20/19 Return to Work).  Plaintiff also continued to have approved intermittent FMLA leave that she used for absences and to leave mid-shift, if her hands/wrists were bothering her.  (Buggs, pp. 171-173).

Plaintiff alleges that in April of 2019, Defendant Reed "harassed" her by making her wait an excessive amount of time after requesting to "FMLA out" (i.e., to leave mid-shift using intermittent FMLA leave).  Plaintiff told the Team Leader (Tiffany, another hourly, union represented employee) that she wanted to leave but is unaware of how quickly the Team Leader made Reed aware of Plaintiff's request to leave.  (Buggs, pp. 170-177).  Plaintiff claims that she experienced another delay in allowing her to "FMLA out" on May 1, 2019, but she is again unaware if, or whom, the Team Leader informed Reed of her request.  (Buggs, pp. 177-179).

At first Plaintiff complained about these "FML delays" to her Union and asked that a grievance be filed (Buggs, p. 170, 177; Ex. 23, 4/10/19 Voluntary Statement). When that did not happen, she complained directly to Arkena Willis in JNAP Labor

Relations. (Buggs, p. 184; Willis, pp. 11-13, 25).  Willis checked with the corporate office about the requirements and then reconfirmed with Reed and other JNAP leaders that they were to allow employees asking to leave the plant using their intermittent FMLA leave to go as soon as possible. (Willis, p. 14).  However, the nature of an assembly plant is such that a supervisor cannot simply let an employee walk off the line.  Supervisors have to first be made aware of the request and must then find a replacement, which may entail borrowing from another area or assigning a Leader to work the line. (Willis, p. 14 Capers, pp. 23-25; Reed, p. 13).  Following her complaint to Labor Relations, Plaintiff identified no further delays in "FMLA out" approvals by Reed.

5.    **Job Reassignment**.  In May, 2019, Plaintiff provided FCA with a doctor's letter stating that she should be moved to another department where she would not have to use a drill or lift anything.  (Buggs, p. 182-184; Ex. 24, 4/23/19 Letter).  Plaintiff did not hold sufficient seniority to successfully bid on any open positions off the assembly line.  However, in June, 2019, JNAP had a temporary need for workers in Quality to support an atypical audit connected with a warranty or quality issue. (Exhibit 32; Capers, p. 27-28).  The temporary nature of the assignment allowed management to transfer lower seniority employees on a temporary basis. *Id.*  FCA used this opportunity to transfer Plaintiff to a position in Quality that – by her admission – accommodated all of her restrictions.  (Buggs, pp.

153-54).   Absent this special audit need, Plaintiff could not have transferred to Quality without violating the seniority rights of longer-tenured employees.   (Capers, p. 27-28).   Reed stopped being Plaintiff's supervisor upon her transfer to Quality on or about June 5, 2019.  (Buggs, p. 193-194).

## C.  Termination for Falsification of FMLA Provider Certificate.

Although she was still working the job in Quality at the time, Plaintiff re-applied for intermittent FMLA leave on or about July 31, 2019.  Her request was for absences up to three times per week with a duration of up to 1-2 days per episode and for appointments every 2-3 months. (Buggs, p. 185; Ex. 25, 8/1/19 FMLA).

On August 1, 2019, Sedgwick, the Company's Third Party FMLA Administrator, sent Plaintiff a letter regarding her FMLA claim.  (Buggs, p. 185; Ex. 25).   The letter informed Plaintiff that her treating provider had not properly completed the Provider Certification because he failed to identify a duration for the leave.  Sedgwick advised Plaintiff that her provider needed to provide the required information by August 11, 2019 or her claim may be denied. *Id.*

A corrected FMLA Certification was faxed to Sedgwick on August 11, 2019. (Buggs, pp. 185-91; Ex. 26, Altered FMLA Paperwork).  The form was an exact duplicate of the prior certification except that it included a duration through December 28, 2019 and bore the initials "RW" (purportedly for Plaintiff's provider, Dr. Robert Walker) next to the duration entries and next to the doctor's "Signature"

with a new date of "08-10-2019." *Id.* After checking with Dr. Walker, Sedgwick notified Anne Stebbins (the Hourly FMLA Administration Manager at FCA's Corporate Headquarters) that Dr. Walker denied making the edits to Plaintiff's form or initialing the changes. He provided a signed statement to that effect (Exhibit 33, Stebbins, pp. 15-18; Ex. 27, Dr. Walker's Confirmation).

Stebbins alerted JNAP Labor Relations about the information received from Sedgwick and prepared questions for them to ask Plaintiff about her role in the matter. (Stebbins, p. 16; Ex. 28). Plaintiff was interviewed by Arkena Willis of JNAP Labor Relations. (Willis, p. 16-17; Ex. 28). Plaintiff denied that she made the changes to the form; however, she was unable to explain (then or now) why her doctor would lie when he confirmed that he had not submitted the altered FMLA form. (Buggs, pp. 192-93). Plaintiff was suspended following her interview on August 24, 2019 while her responses were reviewed. (Ex. 29).

FCA concluded that Plaintiff altered the FMLA form. Her employment was terminated on August 28, 2019 for submitting a false FMLA Certification, which violates Company Standards of Conduct. Specifically Standard No. 1 prohibits "providing false and/or misleading information to the Company." (Buggs, p. 194; Ex.30, SOC; Ex. 31, Termination Letter). The termination decision was made by JNAP Labor Relations Supervisor Shera Capers after conferring with Stebbins at Corporate and without any involvement by Defendant Reed. (Capers, p. 20).

Stebbins has been involved in at least 10-12 other cases of hourly employees being terminated for falsifying FMLA paperwork during her tenure as Hourly FMLA Administration Manager.  (Stebbins, p. 13-15).

### III.    STANDARD OF REVIEW

A motion for summary judgment must be granted if the record evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor.  *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  However, a plaintiff must present significant probative evidence on which the jury could reasonably find for her.  *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).

### IV.    ARGUMENT

Plaintiff alleges disparate treatment (Counts I and IV), retaliation (Counts II and V), and failure to accommodate (Counts III and VI) in violation of the ADA and PWDCRA.[6]  Plaintiff's failure to accommodate claim is addressed first, followed by her discrimination and retaliation claims.

---

[6] The PWDCRA 'substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, but not always, resolve the plaintiff's PWDRA claim.'" *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012); *Swann v. Washtenaw County*, 221 F. Supp. 3d 936, 940 (E.D. Mich 2016).  Differences will be noted where pertinent.

**A.      Plaintiff Cannot Establish A Failure to Accommodate.**

To establish a *prima facie* case of failure to accommodate, Plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) her employer failed to provide the necessary accommodation. *Hurtt v. International Services, Inc*., 627 Fed. App'x 414, 419 (6th Cir. 2015); *Whitfield v. Tennessee*, 629 F.3d 253, 259 (6th Cir. 2011).

**1.      Plaintiff is not "Disabled" under the ADA or PWDCRA**.  Plaintiff's failure to accommodate claim fails in the first instance because she has not alleged facts sufficient to demonstrate that she is disabled under the ADA. To be disabled, Plaintiff must have "a physical or mental impairment that substantially limits one or more of the major life activities of such individual ...."  *Talley v. Family Dollar Stores of Ohio, Inc*., 542 F.3d 1099, 1105 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Gruener v. Ohio Casualty Ins. Co*., 510 F.3d 661, 664 (6th Cir. 2008)). The term "major life activities" describes such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, 29 C.F.R. § 1630.2(i), whereas "substantially limits" means the inability to perform, or a severe restriction on the ability to perform, as compared to the average person in the general population.  29 C.F.R. § 1630.2(j).

Working is a major life activity, but being unable to perform a discrete task or specific job or simply "having a work restriction does not automatically render one disabled." *Booth v. Nissan North America, Inc*., 927 F.3d 387, 394 (6th Cir. 2019). Even after the 2008 amendments to the ADA, "a plaintiff who alleges a work-related disability 'is still required to show that [his] impairment limits [his] ability to 'perform a class of jobs or broad range of jobs.'" *Id at 394*, (quoting *Tinsley v. Caterpillar Fin. Servs., Corp*., No. 18-5303, 766 Fed. App'x 337, 342, 2019 WL 1302189, at *5 (6th Cir. Mar. 20, 2019). Having a substantial limitation in performing "unique aspects of a single specific job" does not rise to the level of a disability. *Id.*

Plaintiff's alleged disability is carpal tunnel syndrome which she admits is directly related to her assembly job at FCA. Besides the restrictions that interfered with her ability to do assembly line work, Plaintiff testified that her hands hurt when she is getting dressed, opening doors, doing her own hair, and cooking. (Buggs, p. 13). However, Plaintiff admitted that she cleans her own apartment, does her own grocery shopping, does her own laundry, takes out her trash, and drives herself. Additionally, following her termination from FCA, Plaintiff held jobs at the post office in Allen Park and a postal distribution center in Pontiac, where she worked 10-12 hours per day using her hands to push mail onto a conveyor belt and assemble

and break down boxes.  There was no task at the postal service that Plaintiff could not do because of carpel tunnel syndrome (Buggs, pp. 13-18).

Plaintiff has also started her own company called "Golden Hearts," a business in which she intends to work as a provider of direct, in-home care for mentally and physically disabled people, something she did working for other companies prior to working a JNAP. (Buggs, p. 18-20). Although her business plans were stalled by the COVID-19 pandemic, she intends to resume them post pandemic and has no physical issues that would prevent her from doing so. *Id.*

Plaintiff is likewise unable to demonstrate a disability under the PWDCRA which carries the additional requirement that a disability be "unrelated to the individual's ability to perform the duties of a particular job or position."  MCL 37.1103(d)(i)(A).  Unrelated to the individual's ability means that, with or without accommodation, an individual's disability does not prevent the individual from . . . performing the duties of a particular job or position. MCL 37.1103(l)(i).

Here, there can be no question that Plaintiff's carpal tunnel syndrome was directly related to her job on the assembly line at JNAP. (Buggs, p. 26).  Plaintiff's preferred job and the one she usually worked was the "panel secure" job.  However, she admits due to carpal tunnel-related work restrictions, there were many times she simply could not do the job:

> Q  So you told me that the panel secure job required you to
>      use two different kinds of drills to put screws in door

> panels; is that correct?
> A  That's correct.
> Q  Okay. So were you not able to do the panel secure job
>     of these restrictions of no gripping, drilling or using
>     hand tools?
> A  No.
> Q  No, you were not able to do it?
> A  No, I was not able to do it.
> Q  So what did you do?
> A  They would give me 30 days off. I wouldn't do no job. (Buggs, p. 51).

Plaintiff further acknowledges that while on active restrictions, she could not do several other assembly jobs that JNAP management tried putting her on. (Buggs, p.55, 59, 67-69).  Likewise, although she complains about Defendant Reed once moving her off "her" panel secure job to a window installation job, she admits that at any time she had a restriction on use of drills, she could not even do the panel secure job. (Buggs, p. 85-88; 93).

**2.     Plaintiff is not Qualified for Her Position.**  Even assuming she has alleged facts sufficient to established she is disabled, Plaintiff next bears the burden of establishing that she is "otherwise qualified" for the position.  In order to be "otherwise qualified" for a job, an individual must satisfy the requisite skill, experience, education and other requirements of the job the individual holds or desires and be able, with or without reasonable accommodation, to perform the essential functions of the job.  *Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 801 (E.D. Mich. 2014).  An employee "who cannot perform the essential functions of a job is not qualified, and in such cases, the ADA does not come into play."  *Id.*

at 802 (citing *Dietelbach v. Ohio Edison Co.*, 1 Fed. App'x 435, 436-37 (6th Cir. 2001)).

Plaintiff basically held two positions during her employment with FCA: the first as an assembly line team member on the door line, and the second on a temporary audit assignment in Quality. (Buggs, pp. 28, 37). Despite her on again/off again work restrictions, Plaintiff basically admits that she could not consistently perform any of the jobs on the door line with carpal tunnel syndrome. (Buggs, pp. 51, 54-55, 67-68, 93-94, 115, 120) ("I knew I could not do the secure job with the restrictions."). Additionally, Plaintiff was no longer qualified for employment with FCA at all, even in the Quality position, after she submitted fraudulent FMLA paperwork to FCA US violating FCA's Standard of Conduct. As a result of Plaintiff's carpal tunnel syndrome, and her own misconduct, she was not qualified for her assembly or Quality positions at FCA US.

3.    **Plaintiff Proposed No Reasonable Accommodation.** Even assuming Plaintiff could show she was disabled and qualified, Plaintiff also "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)). "An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship." *Hedrick*, 355 F.3d at 457.

An accommodation is "reasonable" under the ADA only if it actually addresses an obstacle that prevents the employee from doing his or her job. *Tchankpa v. Ascena Retail Group, Inc*., 951 F.3d 805 (6th Cir. 2020).

Even if Plaintiff could get past the hurdles above, she cannot demonstrate that she proposed and was denied any objectively reasonable accommodation that would have enabled her to continuously work at JNAP. Plaintiff's primary complaint is that her intermittent lifting and drill usage restrictions were not consistently honored and/or that there were times when she was sent home because there was no work available within her restrictions. Plaintiff acknowledges -- and the record evidence supports -- that her restrictions were intermittently in place and were at times removed at her request. When she had restrictions, they most frequently included no lifting over 5 pounds, no gripping and/or no use of vibratory tools, which could not be accommodated in any job in the door line, including her preferred "panel secure" job. (Buggs, pp. 51, 54-56, 59, 66-68, 100-102, 104-108, 120-121). She points to no evidence that she requested any open, available assembly job(s) that would have better accommodated her restrictions. Moreover, it is undisputed that for extended and repeated time periods in which there were no available jobs within her restrictions, she was placed on excused leave – not terminated.[7]

---

[7] Leave may constitute a reasonable accommodation in such circumstances. In *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 782 (6th Cir. 1998), the Sixth Circuit noted that "[m]edical leave as an accommodation is not a novel

At most, Plaintiff can point to a doctor's note she submitted to FCA in May 2019, recommending that she be transferred to another, unspecified department – where she would not have to lift any weight greater than five pounds and not have to use the drill – for two months. (Ex 24).  However, Plaintiff did not and cannot identify any such open positions available to her in another department at that time. Moreover, within a month of submitting her "transfer" request, by June 5, 2019, FCA was able to and did move Plaintiff to a temporary Quality audit assignment for which placement was not governed by seniority.  The Quality assignment completely accommodated her doctor's recommendations.  Plaintiff offers no specific evidence of having been denied an earlier opportunity to transfer out of assembly without ignoring the seniority mandates of the CBA.  The ADA does not require an employer to "violate other employees' rights under a collective bargaining agreement or other nondiscriminatory policy in order to accommodate a disabled individual." *Burns v. Coca–Cola Enters, Inc*., 222 F.3d 247, 257 (6th Cir. 2000)

Not only is Plaintiff unable to establish that she is not disabled within the meaning of both statutes and was not qualified for the position, she is also unable to establish that she requested a reasonable accommodation that FCA failed to provide. Plaintiff's failure to accommodate claim therefore must be dismissed.

---

concept."  The court declined to institute "a per se rule that an unpaid leave of indefinite duration (or a very lengthy period, such as one year) could never constitute a 'reasonable accommodation' under the ADA."  *Id.*

**B.     Plaintiff Cannot Establish Disability Discrimination.**

Plaintiff claims she was disparately treated on the job and ultimately terminated because of her disability. To establish a *prima facie* case of disparate treatment discrimination, Plaintiff must prove: (1) she has a disability; (2) she is otherwise qualified for her job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. Plaintiff's disability must be a "but for" cause of her adverse treatment and termination to meet this third element. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

If Plaintiff can meet each of the *prima facie* elements, the burden of production shifts to the Defendant to articulate a legitimate, non-discriminatory justification for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  If Defendant meet this requirement, the burden shifts back to Plaintiff to show that the reason asserted is mere pretext for unlawful retaliation. *Hurtt*, 627 Fed. App'x at 419; *Peden v. City of Detroit*, 470 Mich., 195, 205 (2004).

For all the reasons discussed above, Plaintiff's claim fails in the first instance because she has not alleged facts sufficient to make the requisite showing that she is disabled or otherwise qualified for the job under the ADA and/or PWDCRA.  Even assuming she could make such a showing, Plaintiff cannot demonstrate a material

question of fact as to whether her carpal tunnel syndrome was the "but for" cause of her termination or any other alleged adverse action.

Plaintiff cannot point to any evidence besides her subjective belief that she was treated differently than non-disabled comparable employees, or that she was discriminated against on the basis of her alleged disability.  Plaintiff complains that Defendant Reed was rude to her and interfered with her job.  However, she admits that Reed was rude to other employees as well and similarly moved them from their normal jobs, and "interfered with their jobs."  (Buggs, pp. 83-84, 144).  Moreover, Plaintiff cannot point to any other employee who submitted falsified FMLA paperwork and was not likewise terminated.

Even if Plaintiff could establish a *prima facie* case of ADA or PWDCRA discrimination, her claim fails because FCA US had a legitimate, non-discriminatory justification for its actions.  As discussed above, FCA US terminated Plaintiff's employment because it concluded that she falsified dates and her doctor's initials on an FMLA provider certificate.  To demonstrate that the Company's legitimate reason for Plaintiff's termination is pretextual, Plaintiff must show that the proffered reason: (1) has no basis in fact; (2) did not motivate the defendant's conduct; or (3) was insufficient to warrant the conduct.  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 286 (6th Cir. 2012).  This Plaintiff cannot do.  Other than denying having falsified

the Certification, Plaintiff offers no plausible explanation as to who made the changes or why her long time doctor denied making them. (Buggs, pp. 192-193).

With respect to motivation for the Company's actions, it cannot be disputed that the investigation of Plaintiff's FMLA paperwork was initiated at FCA's corporate office not at JNAP.  Moreover, Defendant Reed, the only supervisor Plaintiff contends was intentionally discriminating against her, was no longer her supervisor at the time of her termination and had no involvement whatsoever in the investigation or the termination decision.  With respect to Plaintiff's actions being sufficient to warrant termination, Stebbins testified that she has been involved in the termination of approximately 10-12 other employees for the same reason.

Even if Plaintiff could prove that the handwriting is not hers and that FCA was mistaken, so long as FCA "made a 'reasonably informed and considered decision' based on 'particularized facts,' then no reasonable juror could infer that the reason given for firing [Plaintiff] was pretextual." *Smith v. Towne Properties Asset Management Company, Inc.*, 803 Fed. App'x 849, 851 (6th Cir. 2020) (quoting *Babb v. Maryville Anesthesiologists, P.C.*, 942 F.3d 308, 322 (6th Cir. 2019)).  "It is not within [the Court's] province to act as a 'super personnel department[] to second guess an employer's facially legitimate business decisions.'" *Hunt v. Monro Muffler Brake, Inc.*, 769 Fed. App'x 253, 257 (6th Cir. 2019) (quoting *Lee v. City of Columbus*, 636 F.3d 245, 257-58 (6th Cir. 2011)).

23

### C.    Plaintiff Cannot Establish ADA or PWDCRA Retaliation.

Plaintiff also claims she was retaliated against under the ADA and PWDCRA. To state a *prima facie* retaliation claim, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against the Plaintiff; and, (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Bryson v. Regis Corp*., 498 F.3d 561 (6th Cir. 2007). To establish a causal connection, temporal proximity alone is not enough. *Robinson v. MGM Grand Detroit, LLC*, 821 Fed. App'x 522, 532 (6th Cir. 2020). Instead, Plaintiff "must establish that but for [her protected activity], [she] would not have been terminated. *Robinson*, 821 Fed. App'x at 532. If Plaintiff establishes a *prima facie* case, then Defendant must produce evidence of a legitimate, non-discriminatory reason for the alleged adverse action. *A.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). Plaintiff must then produce evidence that the proffered legitimate reason was not the true reason, but instead a pretext for retaliation. *Id.* at 702.

Plaintiff's claim fails because she has no evidence that FCA terminated her employment because of her September 2018 EEOC Charge or her internal complaints about FMLA delays. The FMLA paperwork investigation was initiated by the corporate office after Anne Stebbins was alerted by Sedgwick. Moreover,

Shera Capers, who made the termination decision in August 2019, was at the time unaware that Plaintiff had filed an EEOC Charge almost a full year earlier, in September 2018.  (Capers, p. 15).  Plaintiff simply cannot establish that her taking or requesting leave and accommodations, or any complaint she made is the "but for" reason for her termination.

## V.    CONCLUSION

For the reasons set forth above, Defendant FCA US, LLC requests that this honorable Court dismiss Plaintiff's claims, with prejudice, pursuant to Fed. R. Civ. P. 56 and enter judgment in favor of Defendant.

Respectfully submitted,

s/ Sharon Rae Gross
SHARON RAE GROSS (P42514)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Defendant FCA US, LLC
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
248-593-6400
rae.gross@ogletree.com

Dated: June 15, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 15, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Court's e-filing system, which will send notification of such filing to all counsel of record.

<div style="margin-left:40%;">

s/ <u>Sharon Rae Gross          </u>
SHARON RAE GROSS (P42514)
Ogletree, Deakins, Nash,
Smoak & Stewart, PLLC
Attorneys for Defendant FCA US, LLC
34977 Woodward Avenue, Suite 300
Birmingham, MI  48009
248-593-6400
rae.gross@ogletree.com

</div>

Dated:  June 15, 2021

47495619.1

26