**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTOINETTE BUGGS,

     Plaintiff,

v.                                                                  CASE NO. 20-CV-10218

FCA US, LLC, a Delaware Limited                HON. NANCY G. EDMUNDS
Liability Company, and DONNA
LANGFORD REED, an individual,

     Defendants.

_____

## PLAINTIFF'S RESPONSE TO DEFENDANT FCA'S MOTION FOR SUMMARY JUDGMENT

     NOW COMES Plaintiff, by and through his attorneys, and for his Response to Defendant FCA's Motion for Summary Judgment respectfully request this Honorable Court rule in Plaintiff's favor and DENY Defendant's Motion for Summary Judgment for the reasons set forth in the Brief accompanying this Motion.

                                           Respectfully submitted:

                                           */s/ Stephen M. Lovell*_____
                                           Stephen M. Lovell (P80921)
                                           Attorneys for Plaintiff
                                           645 Griswold Street, Ste. 4100
                                           Detroit, Michigan 48226
                                           (313) 965-5555 /f (313)965-5556
                                           stephen@ecllawfirm.com

July 9, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

STATEMENT OF ISSUES PRESENTED..................................................iv

CONTROLLING AND MOST APPROPRIATE AUTHORITY...........................v

I.      STATEMENT OF FACTS......................................................................1

        A. Plaintiff's Job History................................................................1

        B. Plaintiff's Medical Issues and Disability.......................................1

II.     STANDARD OF REIVEW.....................................................................13

III.    ARGUMENT........................................................................................14

        A. Defendant FCA Failed to Accommodate Plaintiff.....................14

            1. Plaintiff's Carpal Tunnel Syndrome Qualifies As A Disability.....18

            2. Plaintiff Was Qualified For Her Position.........................19

            3. Plaintiff Requested To Be Accommodated And Her Employer
               Failed To Provide A Necessary Accommodation..........................20

        B. Plaintiff Can Establish Disability Discrimination and Retaliation...........22

            1. Plaintiff Suffered An Adverse Employment Action.......................23

            2. Plaintiff Engaged In Known Protected Activity............................24

            3. Defendant's Actions Were Pretext...................................24

IV.     CONCLUSION....................................................................................25

PROOF OF SERVICE...............................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Albertson, Inc. v. Kirkingburg*, 527 U.S. 555 (1999)...............................16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................13

*Bryson v. Regis Corp.*, 498 F.3d 561 (6th Cir. 2007) ............................22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)........................................13

*Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795 (E.D. Mich. 2014)...............20

*Dietelbach v. Ohio Edison Co.*, 1 Fed. App'x 435 (6th Cir. 2001)........................20

*Donald v. Sybra, Inc.*, 667 F.3d 757 (6th Cir. 2012) ...............................15

*EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089 (6th Cir. 1998)......................14

*Estate of Mauro v. Borgess Med. Cen.*, 137 F.3d 398 (6th Cir. 1998)...................15

*Feick v County of Monroe*, 229 Mich App 335 (1998)............................................23

*Hendricks-Robinson v Excel Corp*, 154 F3d 685 (CA 7, 1998)........................16, 20

*Howard v Mich Dep't of Corrections*, 2013 Mich. App. LEXIS 844 (2013)..........16

*Hurtt v. International Services, Inc.*, 627 Fed. App'x 414 (6th Cir. 2015) ......17, 23

*International Bhd of Teamsters v United States,* 431 US 324 (1997)....................23

*Johnson v Kroger Co*, 319 F3d 858 (6th Cir 2003)....................................................23

*Keller v BD of Educ.*, 182F. Supp. 2d 1148 (D.N.M. 2001)...................................18

*Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)....................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..............................22, 23

*Peden v. City of Detroit*, 470 Mich. (2004) ...........................................................23

*Richards v American Axle & Manuf'g, Inc*, 84 F. Supp. 2d 862 (ED MI, 2000)....16

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014) ...........................................22

*Sanchez v Lagoudakis*, 440 Mich. 496; 486 N.W.2d 657 (1992)...........................18

*School Bd of Nassau Co v Arline*, 480 U.S. 273 (1987)..........................................17

*Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998)...........................................14

*Spees v. James Marine, Inc.*, 617 F.3d 380 (6th Cir. 2010)....................................23

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999)...........................................16

*Swann v. Washtenaw County*, 221 F. Supp. 3d 936 (E.D. Mich 2016) .................15

*Taylor v Principal Financial Group, Inc*, 93 F3d 155 (CA 5, 1996).....................16

*Whitfield v. Tennessee*, 629 F.3d 253 (6th Cir. 2011) ............................................17

*Wilson v. Chrysler Corp.*, 172 F.3d 500 (7th Cir. 1999)........................................15

**Statutes**
42 U.S.C. § 12101. ..................................................................................................17

MCL 37.1103(d)(i)(A) .............................................................................................17

MCL 37.1103(e) .......................................................................................................18

**Other Authorities**
29 C.F.R. § 1630.2(k)(1)...........................................................................................17

Fed. R. Civ. P. 56 .....................................................................................................13

## STATEMENT OF ISSUES PRESENTED

1. Should Plaintiff's failure to accommodate claims under the ADA and PWDCRA be dismissed where Plaintiff is disabled, qualified for her position, and was denied a reasonable accommodation?

**Plaintiff answers: No**

2. Should Plaintiff's discrimination claims under the ADA and PWDCRA be dismissed where Plaintiff was disabled, otherwise qualified for her position, and she can demonstrate that but for her carpal tunnel syndrome she would not have suffered an adverse employment action?

**Plaintiff answers: No**

3. Should Plaintiff's retaliation claims under the ADA and PWDCRA be dismissed where there is evidence that but for Plaintiff's protected activity FCA would not have taken an adverse action against Plaintiff?

**Plaintiff answers: No**

4. Should Plaintiff's discrimination and retaliation claims under the ADA and PWDCRA be dismissed where Plaintiff can pretext?

**Plaintiff answers: No**

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

*Estate of Mauro v. Borgess Med. Cen.*, 137 F.3d 398 (6th Cir.)

*Hurtt v. International Services, Inc*., 627 Fed. App'x 414 (6th Cir. 2015)

*Hendricks-Robinson v Excel Corp*, 154 F3d 685 (CA 7, 1998)

*Keller v BD of Educ*., 182F. Supp. 2d 1148  (D.N.M. 2001)

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

*Richards v American Axle & Manuf'g, Inc*, 84 F. Supp. 2d 862 (ED MI, 2000)

*Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014)

*School Bd of Nassau Co v Arline*, 480 U.S. 273 (1987)

*Spees v. James Marine, Inc.*, 617 F.3d 380 (6th Cir. 2010)

# I. STATEMENT OF FACTS

## A. Plaintiff's Job History

Plaintiff began working as a Temporary Part-Time employee ("TPT") for FCA in June 2015. (Ex. 1, Deposition Transcript of Plaintiff at p. 24). Plaintiff worked on the assembly line at JNAP. *Id*. As a TPT, Plaintiff did not have regular employee status or seniority.2 (Ex. 1 at pp. 25-26). She served as a replacement worker for employees who were absent or on vacation. *Id.* While a TPT, Plaintiff was primarily assigned to Team 41 on the door line. *Id*. at pp. 26-27. Team 41 encompassed about six or seven different assembly jobs. *Id.* at p. 28. As a TPT, Plaintiff usually did the "panel secure" job, which required her to use hand drills to apply screws to secure the panel to the door. *Id*. At times, she also performed a door tester job that required use of a hand drill. *Id*. at pp. 29, 107.

Plaintiff received a promotion to a regular full-time employee as of March 5, 2018. *Id.* at p. 36.  Defendant Donna Langford Reed first became Plaintiff's supervisor on or about February 28, 2018 and supervised her until approximately June 5, 2019.  *Id*. at p. 193.  Defendant Reed subjected Plaintiff to disability discrimination, which is explained more fully below. *Id*. at p. 39.

## B. Medical Issues and Disability

Near the end of July, 2016, Plaintiff began experiencing issues with pain in her hands. *Id*. at p. 50. She had no such issues before her employment at FCA.  *Id*.

1

p. 26.  After Plaintiff began experiencing issues with her hands and upon returning to work from a brief absence, she provided the JNAP Medical Department with a return to work note from her doctor dated July 27, 2016.  (Ex. 1 at p. 50; Ex. 2 – Return to Work Note 7/27/16). The note said that Plaintiff might have carpal tunnel syndrome and should be restricted from doing any "*gripping, drilling, and using hand tools*" until November 15, 2016. *Id*. The Medical Department accordingly put Plaintiff's restrictions into the Company's computer system that tracks employees' work restrictions and Plaintiff's supervisor is informed of the restriction.  (Ex. 1 at p. 50; Ex. 3, Deposition Transcript of Defendant Reed at p. 12).

As a result of her restrictions, Plaintiff was unable to perform the functions of the panel secure job and given a 30 day leave because there were no positions available for her that would meet her restrictions. (Ex. 1 at p. 51). A few weeks later, Plaintiff went to her doctor and requested that she be cleared to return to work and was diagnosed with bilateral carpel tunnel syndrome. (Ex. 1 at pp. 52-53; Ex. 4, Return to Work Note 08/19/16).

Plaintiff returned to work but quickly determined that she still could not do any lifting or use hand tools and therefore informed the Company that she was unable to perform any of the available assembly jobs due to her disability. (Ex. 1 at

p. 55).   Plaintiff was told by her supervisor that she could not return to work until she had surgery for her disability.  *Id*.

While off work, Plaintiff submitted a request for intermittent FMLA leave in August, 2016. (Ex. 1 at p. 57; Ex. 5, 8/23/16 FMLA). Plaintiff sought intermittent FMLA leave of two to three episodes per month and one day per episode for symptoms related to her previous stroke. The Company approved Plaintiff's intermittent FMLA leave request from June 10, 2016 until December 31, 2016 based on "a serious health condition that makes you unable to perform the essential functions of [her] job"; however, she never needed to use FMLA leave during that time. (Ex. 1 at pp. 59-60; Ex. 5).

Plaintiff had two surgeries, one on each hand in October and in December, 2016. (Ex. 1 at p. 60).  Plaintiff returned to work from her surgeries on January 30, 2017. (Ex. 1 at p. 61; Ex. 6, 1/26/17 Physical Status Report). Upon her return to work, Plaintiff presented with restrictions on her right hand but no work restrictions due to the type of work she was doing.  (Ex. 6).

In June of 2017, Plaintiff again requested intermittent FMLA leave. (Ex. 1 at p. 65; Ex. 7, 6/13/17 FMLA). Plaintiff's request was denied because she was ineligible for FMLA leave. She had not worked the requisite 1250 hours in the preceding twelve (12) months.  *Id*.  Plaintiff was taken off of her job doing panel secure and was moved to the rear door panel in July, 2017 which she had not been

medically evaluated to do and which went against the restrictions to her right hand. (Ex. 1 at pp. 67, 68, 73).   Plaintiff ended up further injuring her hand doing the rear door panel job.  (Ex. 1 at pp. 66-75; Ex. 8, Work Injury Statement).  However, there are no records of Plaintiff having any issues performing her job on Team 41 following the July, 2017 injury.

FCA hired Plaintiff to a regular full-time job effective March 5, 2018. (Ex. 1 at p. 36).   Defendant Donna Langford Reed became Plaintiff's immediate supervisor just a few days earlier, on February 28, 2018. (Ex. 1 at p. 39).  From the outset, Defendant Reed made Plaintiff work on jobs that were outside of her abilities due to the carpel tunnel she suffered in both hands. (Ex. 9, 03/12/18 Statement). In her statement, Plaintiff claimed that on March 10, 2018, Reed moved her from Team 41 on the door line to Team 38, working on a window seal job – a job she could not do because of her carpal tunnel surgery and she informed Defendant Reed of this. (Ex. 1 at p. 85; Ex. 9).  Plaintiff has restrictions that prevented her from doing the job.  (Ex. 1 at pp. 85-87).

After attempting to work the window seal job on March 10, 2018, Plaintiff went to the plant Medical Department and informed them that she has carpel tunnel and told Defendant Reed that she was unable to do the job assigned to her. (Ex. 1 at pp. 88-91; Ex. 10 – Medical Encounters at p. 5).  The Medical Department provided her with wrist wraps, biofreeze, and over-the-counter medication.  *Id.*

4

Plaintiff continued to try to do the job but was having difficulty and medical could not offer her braces for her wrists. (Ex. 1 at p. 91; Ex. 9).  A union steward and union safety rep suggested that Plaintiff go home to get her braces so that she could do the job.  (Ex. 1 at p. 92; Ex. 9).   Plaintiff then overhead Defendant Reed telling other management employees that she was going to suspend Plaintiff for 30 days if she required any restrictions.  (Ex. 1 at p. 93; Ex. 9).  When Plaintiff returned with her braces, she was put on notice by Defendant Reed, which meant that Plaintiff could be written up and subject to discipline if anything else happened.  (Ex. 1 at p. 97; Ex. 9).

The following day, Plaintiff was again put in Team 38 even though the job caused her to have to go to medical the day before, Plaintiff informed Defendant Reed that she could not do the job on Team 38 due to her carpel tunnel syndrome. (Ex. 1 at p. 98; Ex. 9).  Defendant Reed then sent Plaintiff home and no reason was given for why Plaintiff was forced to leave and lose out on her pay for the day.  *Id*. Plaintiff continued to be harassed by Defendant Reed on a daily basis and felt she was being forced to work in a hostile work environment.  (Ex. 9).

On March 15, 2018, Plaintiff was again put on a job that she was unable to do due to her disability.  (Ex. 11, 03/16/18 Statement).  There were jobs available for Plaintiff to do within her limitations and Plaintiff had worked various jobs with little aggravation to her carpal tunnel.  (Ex. 11).   After Plaintiff complained to

Defendant Reed that she could not do the job due to her disability, Plaintiff was put on a two person job by herself, which she was also unable to do.  *Id*.  Plaintiff was then moved to another job where she was being trained by another employee who was doing half the job.  *Id*.  Even though Plaintiff was still being trained, Defendant Reed informed her that she had to do the entire job herself, which she was unable to do.  *Id*.  Plaintiff's team leader even tried to tell Defendant Reed that there were jobs available that Plaintiff could do but Defendant Reed refused to move Plaintiff and put other employees in the open spots.  *Id*.  Plaintiff again had to go to plant Medical Department on March 15, 2018 for the same complaint related to her disability.  (Ex. 10 at p. 5).

When Plaintiff returned from medical, she was informed that Defendant Reed intended to have her fired and would do so if Plaintiff continued to require trips to the Medical Department while on probation.  (Ex. 11).  Plaintiff continued to come into work and be assigned jobs by Defendant Reed that she was unable to do.  (Ex. 11).

In order to try and protect herself after being informed of Defendant Reed's intention to have her fired, on March 16, 2018, Plaintiff presented the Medical Department with a note from an urgent care center stating that she was restricted from lifting more than 5 pounds for two weeks but that assembly and hand tools were otherwise okay.  (Ex. 12, 3/16/18 Doctor's Note).   On March 26, 2018,

Plaintiff presented another doctor's note indicating she could do "no gripping, hand tools are okay, nothing over five pounds" for the period from March 26, 2018 through June 26, 2018 due to carpel tunnel syndrome.  (Ex. 1 at pp. 100-01; Ex. 13, 3/26/18 Return to Work).

Following the written restrictions, Plaintiff stayed on the panel secure job after her union came to an agreement with Defendant FCA's management and Defendant Reed.  (Ex. 1 at p. 115).  However, on June 13, 2018, Plaintiff's drill stopped working, and Defendant Reed asked her to use a heavier, secondary drill to do the panel secure job. (Ex. 1 at pp. 109-118; Ex. 14, 06/14/18 Statement). Plaintiff refused to use the drill because it was against her restrictions and Defendant Reed told Plaintiff that she was going to kick her off the team.  (Ex. 1 at pp. 111-112; Ex. 14).  Defendant Reed attempted to take Plaintiff off of the line and send her to medical and Plaintiff had to get her union steward involved.  (Ex. 1 at pp. 112-113; Ex. 14).

 The following day, Plaintiff was working her job when Defendant Reed told Plaintiff that she needed to go to medical and that there was no work available for her.  (Ex. 1 at pp. 114; Ex. 14).  Plaintiff explained that she could do her job and did not need to go to medical.  (Ex. 1 at pp. 114; Ex. 14).   Plaintiff had the same restrictions since March 26, 2018.  (Ex. 13).  Plaintiff was then told there would be no job available for her for 30 days.  (Ex. 1 at pp. 118).  After being told she could

not work for 30 days, Plaintiff returned to her doctor and he removed the no-gripping restriction. Plaintiff's new restrictions provided for limited gripping up to five hours a day, no heavy duty drills, and no lifting over five pounds. (Ex. 1 at p. 119; Ex. 15, 6/18/18 Return to Work). Plaintiff also applied for intermittent FMLA leave related to carpal tunnel syndrome in June of 2018. (Ex. 1 at p. 122-25; Ex. 16, 6/20/18 FMLA). She was approved for intermittent leave of up to two days per week with a duration of up to three days per episode. (Ex. 15).

Defendant Reed's harassment of Plaintiff continued over the next several months.  On August 23, 2018, Plaintiff was accused by Defendant Reed of damaging a panel and put on notice. (Ex. 1 at p. 126; Ex. 17, 08/23/18 Statement). Plaintiff explained that she could not have caused the damage and that she did not know who did.  (Ex. 1 at p. 126).  Plaintiff was also harassed about how she did her job even though other employees did the job the exact same way and were not subject to harassment by Defendant Reed.  (Ex. 18, 09/13/18 Statement).

Plaintiff provided Defendant FCA with another doctor's letter with slightly different restrictions in September, 2018. (Ex. 1 at p. 156; Ex. 19, 9/21/18 Return to Work). Plaintiff's restrictions were now "activity as tolerated, not >5 lbs, limited hand tools."  *Id*.   Plaintiff had complained about the harassment by Defendant Reed and Defendants' failure to follow her restrictions to Arkena Willis from Human Resources.  (Ex. 1 at p. 151).  After nothing was done by Defendant FCA

to assist Plaintiff and her harassment continued, Plaintiff filed an EEOC Charge alleging that she was being harassed by her supervisor and that she had submitted a reasonable accommodation request after the litany of harassment she had suffered. (Ex. 1 at pp. 149-152; Ex. 20, EEOC Charge).  Plaintiff told Ms. Willis that she had filed the EEOC complaint and again explained the various issues with Defendant Reed.  (Ex. 1 at p. 152).

Plaintiff continued to have issues with Defendant Reed after filing her EEOC complaint and speaking with Ms. Willis.  Plaintiff had been working the same job for months with no issues.  *Id.* at p. 160.  However, Defendant FCA switched the drill that was used for the panel job and the new drill hurt Plaintiff and was no longer within her restrictions.  (Ex. 1 at p. 161; Ex. 21, 11/14/18 Statement).  Once Plaintiff informed Defendant Reed that the drill hurt her hand and was outside of her restrictions, Defendant Reed began putting Plaintiff into the panel secure job more often.  (Ex. 21).  Plaintiff had to go to medical on November 3 and 8, 2018 due to the drill being too heavy and causing her pain.  (Ex. 10 at p. 8).

On November 9, 2018, Plaintiff was working on the door tester job because of the new drill violating her restrictions.  (Ex. 1 at p. 160; Ex. 21).  Defendant Reed brought another employee in to do the door tester job and put Plaintiff back on the door panel secure job, which required her to use a drill outside of her

restrictions.  (Ex. 1 at p. 160; Ex. 21).   The operations manager had to be involved to resolve the situation and a union grievance was filed for a hostile work environment due to Defendant Reed's behavior.  (Ex. 21; Ex. 22, Grievance).

In March of 2019, Plaintiff provided another doctor's note continuing her restrictions of "limited use" of vibratory tools and no lifting anything over 5 pounds. (Ex. 1 at p. 169; Ex. 23, 3/20/19 Return to Work). Plaintiff also continued to have approved intermittent FMLA leave that she used for absences and to leave mid-shift, if her hands/wrists were bothering her. (Ex. 1 at pp. 171-173).

Shortly after Plaintiff was approved for her intermittent FMLA leave, Defendant Reed would delay her in being able to leave.  This happened on multiple occasions where Plaintiff was delayed anywhere from thirty minutes to several hours.  (Ex. 1 at pp. 170, 178, 179).   While Defendant FCA claims that it was Defendant Reed's friend who failed to inform her of Plaintiff's requests, this is contradicted by the fact that even when Plaintiff told Defendant Reed directly that she needed to leave, she was still delayed.  *Id*. at p. 179.   Plaintiff even complained about this to Ms. Willis in Human Resources who informed the lead labor relations supervisor that Defendant Reed had been delaying allowing Plaintiff to leave for FMLA.  (Ex. 24, Email Regarding Leave).  And although Ms. Willis and Ms. Capers claimed that this issue was discussed with Defendant Reed, Defendant Reed claims that no one at FCA ever spoke with her about Plaintiff's

complaint or at any time about employees having to wait to go on FMLA. (Ex. 3 at p. 15; Ex. 25, Deposition Transcript of Willis at p. 14; Ex. 26, Deposition Transcript of Capers at pp. 23-25).

While working in the Quality department, Plaintiff re-applied for intermittent FMLA leave on or about July 31, 2019. Her request was for absences up to three times per week with a duration of up to 1-2 days per episode and for appointments every 2-3 months. (Ex. 1 at p. 185; Ex. 27, 8/1/19 FMLA). On August 1, 2019, Sedgwick, the Company's Third Party FMLA Administrator, sent Plaintiff a letter regarding her FMLA claim. (Ex. 1 at p. 185; Ex. 23). The letter informed Plaintiff that her treating provider had not properly completed the Provider Certification because he failed to identify a duration for the leave. Sedgwick advised Plaintiff that her provider needed to provide the required information by August 11, 2019 or her claim may be denied. *Id.*

A corrected FMLA Certification was faxed to Sedgwick on August 11, 2019. (Ex. 1 at pp. 185-91; Ex. 28, New FMLA Paperwork). The form was an exact duplicate of the prior certification except that it included a duration through December 28, 2019 and bore the initials "RW" next to the duration entries and next to the doctor's signature with a new date of "08-10-2019." *Id*. After checking with Dr. Walker, Sedgwick notified Anne Stebbins that Dr. Walker denied making the edits to Plaintiff's form or initialing the changes. (Exhibit 29, Deposition

Transcript of Stebbins at pp. 15-18).  However, Ms. Stebbins never even inquired to Sedgwick as to where the fax came from or whether it could find out.  *Id*. at p. 16.

Stebbins alerted JNAP Labor Relations about the information received from Sedgwick and prepared questions for them to ask Plaintiff about her role in the matter. (Ex. 29 at p. 16; Ex. 30, Interview Notes). Plaintiff was interviewed by Arkena Willis of JNAP Labor Relations. (Willis, p. 16-17; Ex. 26).  Plaintiff denied that she made the changes to the form and stated that the forms were left at the doctor's office.  (Ex. 30).  Plaintiff was suspended following her interview on August 24, 2019 while her responses were reviewed. (Ex. 31, Suspension).

Defendant FCA concluded that Plaintiff altered the FMLA form. Her employment was terminated on August 28, 2019 for submitting a false FMLA Certification, which violates Company Standards of Conduct. Specifically Standard No. 1 prohibits "providing false and/or misleading information to the Company." (Ex. 1 at p. 194; Ex. 32, Termination Letter). The termination decision was made by JNAP Labor Relations Supervisor Shera Capers after conferring with Stebbins at Corporate. (Ex. 26 at p. 20).   However, the only reason Stebbins articulated for the conclusion that Plaintiff submitted the paperwork was that the doctor stated he did not make changes, which has not informative of where the papers were submitted from.  (Ex. 29 at p. 19).  In fact, Defendant FCA never

inquired into where the fax was received from or whether they could even find out. *Id*. at pp. 16-17.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" only if its resolution affects the outcome of the suit. *Id*.

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587; 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325; 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

While Defendant gives brief gives token acknowledgment of these principles, it then proceeds to do violence to all of them.  Instead of presenting the evidence in a light favorable to Plaintiff, Defendant has combed through the

record, extracted only those facts favorable to its arguments, and twisted all of those facts in a manner beneficial to its own position.

### III. ARGUMENT

Plaintiff alleges disparate treatment (Counts I and IV), retaliation (Counts II and V), and failure to accommodate (Counts III and VI) in violation of the ADA and PWDCRA.

**A. Defendant FCA Failed To Accommodate Plaintiff**

"'The thesis of the [ADA] is simply this: That people with disabilities ought to be judged on the basis of their abilities; they should not be judged nor discriminated against based on unfounded fear, prejudice, ignorance, or mythologies; people ought to be judged on the relevant medical evidence and the abilities they have.'" *Smith v. Chrysler Corp*., 155 F.3d 799, 805 (6th Cir. 1998) (quoting 136 Cong. Rec. S 7422-03, 7347 (daily ed. June 6, 1990) (statement of Sen. Harkin)) (alteration in original). The ADA thus serves to "prohibit employers from making adverse employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics." *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1097 (6th Cir. 1998) (holding that an employer may require an HIV test for a food-handling employee who works with knives as part of an individualized inquiry into the existence of a health or safety risk).  The PWDCRA "substantially

14

mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, but not always, resolve the plaintiff's PWDRA claim." *Donald v. Sybra, Inc*., 667 F.3d 757, 764 (6th Cir. 2012); *Swann v. Washtenaw County*, 221 F. Supp. 3d 936, 940 (E.D. Mich 2016).

The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position. In order to properly evaluate a job applicant on the basis of his personal characteristics, the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question. See, e.g., *Estate of Mauro v. Borgess Med. Cen.*, 137 F.3d 398 (6th Cir.) (conducting an individualized inquiry into the plaintiff's specific situation to determine whether HIV-positive surgical technician was otherwise qualified for his position despite his medical condition), cert. denied, 525 U.S. 815, 119 S. Ct. 51, 142 L. Ed. 2d 39 (1998); *Wilson v. Chrysler Corp*., 172 F.3d 500, 505 (7th Cir. 1999)(stating that "the ADA requires an individualized inquiry into the ability of the employee to perform a particular job").  Indeed, the Supreme Court in recent cases has again made clear that such an individualized determination -- one which focuses on the medical condition's actual effect on the specific plaintiff -- lies at the heart of the ADA. See *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 2147,

144 L. Ed. 2d 450 (1999) (holding that mitigating or corrective measures must be taken into account in judging whether an individual possesses a disability because doing otherwise would "run[] directly counter to the individualized inquiry mandated by the ADA");  *Albertson, Inc. v. Kirkingburg*, 527 U.S. 555, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999)(holding that the ADA imposes a statutory obligation to determine the existence of disabilities on a case-by-case basis, based upon the actual effect of the impairment on the life of the individual in question).

An employee informing an employer of a need for accommodation triggers an "employer's obligation to participate in the interactive process of determining one."  See *Richards v American Axle & Manuf'g, Inc*, 84 F. Supp. 2d 862, 872 (ED MI, 2000), quoting *Taylor v Principal Financial Group, Inc*, 93 F3d 155, 165 (CA 5, 1996); *Hendricks-Robinson v Excel Corp*, 154 F3d 685, 693 (CA 7, 1998)(once an employee informs employer of disability, the employer must engage in a "flexible, interactive process . . . so that, together, they might identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working."); see also *Howard v Mich Dep't of Corrections*, ___NW2d___; 2013 Mich. App. LEXIS 844, at *19-20 (Ct App, May 21, 2013)(an employee brought claims for disability discrimination under the ADA and PWDCRA and after the Court analyzed the plaintiff's ADA claim, including

the defendant's failure to engage in an interactive accommodation process, it then applied that same logic and holding to the plaintiff's PWDCRA claim.)(Ex. 33).

To establish a *prima facie* case of failure to accommodate, Plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) her employer failed to provide the necessary accommodation. *Hurtt v. International Services, Inc*., 627 Fed. App'x 414, 419 (6th Cir. 2015); *Whitfield v. Tennessee*, 629 F.3d 253, 259 (6th Cir. 2011).

"Disability" is defined as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.A. §12102(2)(A-B).[1]   Even if a person does not meet the definition of "disability", there are two other ways they can be protected under the act. First, an individual is considered "disabled" if he or she has a record of an impairment that substantially limits a major life activity. 29 CFR §1630.2(k)(1). When looking at the "record of" inquiry, it is not relevant if the impairing condition is in remission or under control. *School Bd of Nassau Co v Arline*, 480 U.S. 273, 107 S. Ct. 1123; 94 L. Ed. 2d 307 (1987).

---

[1] The PWDCRA defines disability as a "determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder [that] substantially limits 1 or more of the major life activities of that individual." MC.L.A. § 37.1103(d)(I)(A).

Second, if an individual does not meet the first two definitions of having a disability, an individual will still be considered disabled if he or she is "regarded as" being disabled.  PWDCRA's definition of a handicap includes "*being regarded as having a determinable physical or mental characteristic*" that "substantially limits 1 or more of the major life activities of that individual . . . ." MCL 37.1103(e)(emphasis added).  When an employer discriminates against an employee because the employer perceives the employee as handicapped, the employer is in violation of the PWDCRA. See *Sanchez v Lagoudakis*, 440 Mich. 496; 486 N.W.2d 657 (1992), (*On Remand*) 217 Mich. App. 535; 552 N.W.2d 472 (1996), rev'd on other grounds (*After Remand*) 458 Mich. 704; 581 N.W.2d 257 (1998).

### 1.      Plaintiff's Carpal Tunnel Syndrome Qualifies As A Disability

Plaintiff will briefly touch on this issue as it is clear that the carpel tunnel syndrome Plaintiff suffered from is a disability and that it clearly limits one or more of Plaintiff's major life activities.  This is not a case of some benign health issue or cancer remission where even then, Courts have found that there is a question of fact whether a condition counts as a disability even if it is not actively causing issues at the time of the adverse employment action. *Keller v BD of Educ*., 182F. Supp. 2d 1148, 1155 (D.N.M. 2001)(finding genuine issues of material fact as to whether former employee whose breast cancer was in remission was

substantially limited in the life activities of working, walking, and caring for herself for a sufficient duration so as to be considered disabled, precluded summary judgment on employee's ADA claim).

In this case, Plaintiff's carpal tunnel syndrome interfered with her ability to get dressed, holding things, open doors, doing her hair, and cook. (Ex. 1 at p. 13). At various times, Plaintiff was restricted from lifting more than five pounds, "gripping", and could not work at all for two full months due to her carpal tunnel syndrome and its treatment.

Further, there is certainly record of Plaintiff suffering from a disability or was regarded as having a disability.  She went to the Defendant's medical department at least 19 times for issues related to her carpal tunnel, submitted copious amounts of medical records to Defendant FCA, and informed Defendants of her limitations and pains on an almost daily basis.  She had to leave her job to go to medical.  At minimum, there is a question of fact whether Plaintiff was disabled or had a record of disability.

**2. Plaintiff Was Qualified For Her Position.**

There is a question of fact whether Plaintiff was "otherwise qualified" for the position. In order to be "otherwise qualified" for a job, an individual must satisfy the requisite skill, experience, education and other requirements of the job the individual holds or desires and be able, with or without reasonable

accommodation, to perform the essential functions of the job. *Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 801 (E.D. Mich. 2014). An employee "who cannot perform the essential functions of a job is not qualified, and in such cases, the ADA does not come into play." *Id.* at 802 (citing *Dietelbach v. Ohio Edison Co.*, 1 Fed. App'x 435, 436-37 (6th Cir. 2001)).

Plaintiff worked for Defendant for over three years while suffering from carpal tunnel syndrome and being on various restrictions. When Plaintiff worked on the line, Plaintiff could do three out of the four jobs for her team. (Ex. 1 at p. 146). Plaintiff was told that she could do her job as long as she could do at least three out of the four jobs. *Id.* She worked for years without issue and was not fired for an inability to do her job. It is ludicrous for Defendant FCA to now claim that during that entire time, Plaintiff was unqualified.

### 3.   Plaintiff Requested To Be Accommodated And Her Employer Failed To Provide A Necessary Accommodation

Although Plaintiff must request and accommodation, "[a] request as straightforward as asking for continued employment is a sufficient request for accommodation." *Hendricks-Robinson v Excel Corp*, 154 F3d 685, 694 (CA 7, 1998). In this case, Plaintiff submitted several restrictions from her doctors that allowed her to do her job with certain accommodations, such as not using a heavy duty drill and not lifting over five pounds. Plaintiff continued to want to work and submitted paperwork to allow her to work as long as her restrictions were

accommodated.   Once she submitted the paperwork to return to work, this triggered a duty for Defendant FCA to engage with Plaintiff in an interactive accommodation process.   See *Richards v American Axle & Manuf'g, Inc*, 84 F. Supp. 2d 862, 872 (ED MI, 2000).   This was never done in Plaintiff's case.

Instead, Plaintiff had to go in each day and argue with Defendant Reed regarding being accommodated and involve the union and operations manager to get her needs met.  It is clear that when Plaintiff was able to work the jobs to which she was restricted, she could easily do her job and meet its essential functions. There were months where Plaintiff did her job without an issue.   However, as explained above, Defendants regularly failed to meet her accommodations and would place her in jobs outside of her restrictions, which would cause Plaintiff to complain and again have to seek medical.

Further, Defendant FCA sent Plaintiff home on numerous occasions for extended periods of time due to no work being available within her restrictions. However, Defendant FCA never even engaged Plaintiff in an interactive process to determine exactly what jobs she could do or what was available and, instead, left the decision to Plaintiff's line-level supervisor, who would send Plaintiff home on a whim. There is a question of fact whether Defendant FCA failed to accommodate Plaintiff.

**B.     Plaintiff Can Establish Disability Discrimination And Retaliation**

Plaintiff claims she was disparately treated on the job and ultimately terminated because of her disability. To establish a *prima facie* case of disparate treatment discrimination, Plaintiff must prove: (1) she has a disability; (2) she is otherwise qualified for her job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. Plaintiff's disability must be a "but for" cause of her adverse treatment and termination to meet this third element. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).  To state a *prima facie* retaliation claim, Plaintiff must show: (1) that she engaged in statutorily protected activity; (2) the employer knew of that activity; (3) the employer took an adverse action against the Plaintiff; and, (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014); *Bryson v. Regis Corp.*, 498 F.3d 561 (6th Cir. 2007).

If Plaintiff can meet each of the *prima facie* elements, the burden of production shifts to the Defendant to articulate a legitimate, non-discriminatory justification for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Several courts have stated that a plaintiff may establish pretext by proving showing that (1) the reasons had no basis in fact; (2) if they have a basis in fact, they were not the actual factors motivating the decision;

or (3) if they were factors, they were insufficient to justify the decision. *Johnson v Kroger Co*, 319 F3d 858 (6th Cir 2003); *Feick v County of Monroe*, 229 Mich App 335, 343, 582 NW2d 207 (1998).  The *McDonnell Douglas* prima facie case is based on the conclusion that discriminatory motive "can in some situations be inferred from the mere fact of differences in treatment."  *International Bhd of Teamsters v United States,* 431 US 324, 335 n15 (1997).  If Defendant meets this requirement, the burden shifts back to Plaintiff to show that the reason asserted is mere pretext for unlawful retaliation. *Hurtt*, 627 Fed. App'x at 419; *Peden v. City of Detroit*, 470 Mich., 195, 205 (2004).

### 1. Plaintiff Suffered An Adverse Employment Action

A plaintiff suffers an adverse employment action where there is evidence that the employee was "fired" or received "a less distinguished title, **a material loss of benefits**, **significantly diminished material responsibilities**, **or other indices that might be unique to a particular situation**." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).  In this case, Plaintiff suffered adverse employment actions that go beyond her firing.  As outlined above, she was made to work jobs that were outside of her restrictions, she was yelled at, forced to leave the line to go to medical, made to do the jobs of multiple people without additional pay, and sent home without pay on several occasions.  Setting aside the fact that Plaintiff was terminated, the ultimate adverse employment action, any of the other

23

harassment she suffered also qualifies.  As such, there is a question of fact whether Plaintiff suffered an adverse employment action beyond her firing.

### 2. Plaintiff Engaged In Known Protected Activity

Plaintiff complained verbally to human resources that her disability was not being accommodated and that she was subject to harassment from Defendant Reed. She submitted written statements, grievances, and an EEOC complaint alleging discrimination based on her disability throughout her employment.

### 3. Defendant's Actions Were Pretext

There is no justification that has been given for the horrendous treatment Plaintiff suffered outside of her firing.  In fact, Defendant Reed specifically told Plaintiff that she would not be able to work if she sought restrictions.  Further, when Plaintiff was able to work within her resitrictions, she had not issues whatsoever.  There can be no justification for the treatment she suffered at the hands of Defendant Reed and, indeed, Defendant FCA does not justify it in its Motion.

Further, Plaintiff's termination is pretext.  Plaintiff did not alter the information on the medical form.  Defendant's full investigation included interviewing Plaintiff, who denied the charge.  Defendant FCA did not even check to see where the fax originated from.  A simple check if its machine or an inquiry to Sedgwick would have shown that Plaintiff did not send the fax and, therefore,

did not falsify any information. It does not even make sense for Plaintiff to have forged the documentation since she was working a job that was not demanding and she had no reason not to wait for the doctor to update her forms. There is just simply no reason why Plaintiff should have been fired. As such, there is a question of fact whether Defendant's proffered reason for terminating Plaintiff was pretext and not because of her disability or in retaliation for her complaints of discrimination.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this honorable Court deny Defendant FCA's motion in its entirety.

Respectfully submitted,

*/s/ Stephen M. Lovell*
Stephen M. Lovell (P80921)
Attorneys for Plaintiff
645 Griswold Street, Ste. 4100
Detroit, Michigan 48226
(313) 965-5555 /f (313)965-5556
stephen@ecllawfirm.com

July 9, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 9, 2021, I presented the foregoing paper to the above listed attorneys of record via electronic filing.

<u>      */s/ Deanna Denby*      </u>
Deanna Denby